Scribner, J.
Alexander Gibb, the plaintiff in error here, brought an action in the court of common pleas, by leave of that court, against one E. E. Townsend, as receiver of the property and effects of Dean & Lilly, a partnership, formerly doing business as warehousemen in this county. The action was to recover the value of some 400 bushels of wheat, which had been, deposited in the warehouse in 1891, by Gibb.
The case was tried in the court of common pleas, and a. judgment was rendered in favor of the defendant receiver. A certified transcript of the bill of entries shows that the case was heard and disposed of on the 14th of March, 1894, and1 final judgment rendered on that day, in favor of the defendants, and against the plaintiff, including the costs.
The journal entry next shows that at the same term, on the 31st day of March, 1894, a motion for a new trial which had' beeii filed within thi’ee days after the rendition of the final1 judgment, came on for hearing, and was overruled by the-court. It appears further, that the plaintiff was allowed fifty days after term to file his bill of exceptions. Then follows-this entry: “March term, to-wit, May 12/ 1894: Now comes Alexander Gibb, and presents to the court his certain bill of exceptions herein, which being found by the court to-be true, is allowed, signed and sealed, and on motion, is hereby made part of the record of this case.”
The motion for a new’ trial having been overruled on the 31st day of March, and the bill of exceptions having been presented to the court on the 12th day of May, it appears that forty-two days had intervened between thetimedf the overruling of the motion for a new trial, and in presenting the bill of exceptions to the court for its allowance.
The Supreme Court, on the 27th day of February, 1894, in the case of D. H. Pugh, etc., v. The State on relation of Alfred A. Hall, a proceeding in error to the Circuit Court of Franklin County, held this :
*411 “ First-. The proviso of section 5302 of the Revised Statutes, 89 Ohio Laws, page 125, (quoting) ‘that where exceptions are not allowed and signed during the progress of the trial, the party excepting shall submit the bill of exceptions to the opposite counsel for examination, not less than ten days before the expiration of the said fifty days/ (here ends the quotation), is intended as a condition to the power of the trial judge to sign a bill of exceptions within the fifty days mentioned in sections 5298, 5301 and 5302, and where the condition is not complied with, it is the duty of such judge, unless consent of opposite counsel be given, to refuse to sign and allow the bill.
“Second. The authority given by the second proviso of section 5302, to the trial judge to extend the time for signing not exceeding ten days beyond the expiration of the fifty, is for the con venience of the judge, to enable him to examine, sign and allow the bill, and is not intended to authorize such extension for the purpose of submitting the bill to opposite counsel.”
The ruling appears in the Weekly Law Bulletin for March 5, 1894, page 127.
Hereisa case then, in which the record shows that thebill was presented to the court on the forty-second day after the overruling of the motion for a new trial. This, the court hohL, is not within the time, unless the opposite counsel consent to the using of a part of the ten days — of the last ten days of the fifty days, for the examination of the bill. The rule is very strictly applied the Supreme Court in that case. The record here fails to show us whether or not the opposite counsel was-consenting to the use of any part of the last ten days of the-fifty days for the purpose of examining the bill of the opposite counsel. The record is entirely silent upon this point, and’ a strict regard to the ruling made by the Supreme Court, in the absence of anything in the record tending to excuse the-delay, would seem to require us to regard this bill of exceptions as not having been filed in time; but, notwithstanding-this condition, we have thought proper to go forward and examine the record of the case, and to pass upon the questions, *412 involved precisely as if no defect, if it be a defect, of the character named, existed in the record, and I shall proceed briefly to state the case as presented by the record.
On the 18th of August, 1891, the plaintiff in the action below, deposited with Dean & Lilly, 403 45-60 bushels of wheat. There was issued to him by Dean & Lilly, a receipt, of which the following is a copy.
"New London, Ohio, August 18, 1891. Received in store from A. Gibb, 403 45-60 bushels of wheat, which we store at y cents per bushel per month, and we are to have at the market price when called for, unless we perfer to furnish the grain. Subject to the order of A. Gibb on the surrender of this receipt and the payment of charges. To be kept insured by us. No. 66. Dean & Lilly.”
The plaintiff’s petition below says that Dean & Lilly kept said wheat in store for said Gibb and subject to his order, as they agreed to do, until the 22nd day of August, 1892, when by order of this court Elmer E. Townsend was appointed receiver of the said firm of Dean & Lilly.
It appears by the testimony in the case, in the bill of exceptions, that these gentlemen, Messrs. Dean &'Lilly, ware-housemen, received wheat as was the usual custom in such cases, and mingled it with other wheat w'hich they had in store, and sold and disposed of it, and shipped it or re-delivered it, as they might choose to do when called for.
After the appointment of the receiver in favor of Messrs. Dean & Lilly, the plaintiff, Mr. Gibb, called upon Mr. Townsend for his wheat, which upon consultation with his counsel, the receiver declined to respond to, and hence the bringing of this action to contest the rights as existing between these parties.
The case of Chase v. Washburn, 1 Ohio St. 244, has long been regarded as a case settling the law arising upon questions in cases of this kind.
In the two paragraphs of the syllabus the following rule is stated:
*413 “ In case of an irregular deposit or mutuum, where the obligation is imposed upon the depositary or mutuary, to redeliver, not the specific thing furnished, but another article of the same kind and value ; or where the depositary has the option to return the specific article received, or another of the same kind and value, in either case the property passes to the depositary as fully as in a case of ordinary sale or exchange, and the risk of loss by accident follows the control or dominion over the property.
“ Where a warehouseman receives wheat, and by the consent of the owner, or in accordance with the custom of trade, mixes the wheat in his warehouse, and with the understanding that he is to retain or ship the same for sale on his own ac- . count, at pleasure, and, on presentation of the warehouse receipt, is either to pay the market price thereof in money, or re-deliver the wheat, or other wheat in place of it, the transaction is not a bailment, but a sale, and the property passes to the depositary, and carries with it the risk of loss by accident,”
According to the doctrine here stated, where the facts exist as they are here stated, the wheat, upon delivery to the warehouseman, ceases to be the wheat of the depositor, but becomes the wheat of the depositary. Now, the language of the court is, in such a transaction, that it is not a bailment, but a sale, and the property passes to the depositary' and carries with it the risk of loss by accident.
In the course of the disposition of the case upon this subject, it appears from the language of the court that they regard the sale as one whereby the depositary is to pay for the wheat .and has his election whether he will pay in money or in other wheat. The receipt issued in this case by the warehousemen ■contained no stipulation as appears in this receipt, — that the warehousemen were to have the privilege of taking the wheat at the market price. It reads as follows:
“Milan, Ohio, November 5, 1847. Received in store from . J. C. Washburn (by son), the following articles, to-wit: Thirty bushels of wheat. H. Chase & Co.”
.Some verbal understanding existed between these parties at *414 the time the wheat was delivered outside of this stipulation contained in the receipt, and the report shows the statement of the case; that the wheat was accordingly, from time to time, delivered, and in 1850 a demand was made for either the wheat or the money, and both refused.
Chase then offered evidence tending to prove that his warehouse was burned on the night of the 26th of October, 1849, and that there was then consumed in it sufficient wheat to answer all his outstanding accounts.
The destruction by fire occurred on the night of the 26th of October, 1849, and the demand was made in May, 1850, the May following the fire.
Then there rvas evidence tending to prove the custom at Milan at the time of the fire, and the warehouseman gave evidence tending to show that he had abundant wheat in store at the time of the fire to meet the demand that Mr. Washburn might make for the wheat which he had placed in store.
Washburn offered rebutting evidence tending to show that Mr. Chase had not sufficient wheat in his warehouse, at the time of the fire, to answer all outstanding receipts.
Upon this state of facts the counsel for Chase asked the court to charge the jury, “that the customs at Milan, if known to Washburn, in the absence of an express contraet, became-a part of the contract between the parties, and if the jury should find that Chase had sufficient wheat on hand at the-time of the fire to answer all his outstanding receipts, that lie-•was not liable in this action, and that neither the mingling of the wheat, nor the shipment of it would make Chase liable if he had a sufficient amount of it on hand at the time of the fire-to answer his outstanding receipts.” The court refused this charge. Two of the propositions charged by the court were-excepted to by the defendant below, Chase, and the giving of •was alleged as error in the court above, and these are the assignments of error:
1. Because the court charged the jury, “that if they should find that the wheat was received and put in mass with other *415 wheat of defendant and that received of other persons, with the understanding that the wheat was to be at the disposal of" the defendant, either to remain or to ship it, and with the agreement that, when the receipts were presented, the defendant would either pay the market price therefor, or re-deliver thé wheat or other wheat equal in amount and quality; then,, if the jury should further find that the wheat thus left prior to the fire had all been shipped and disposed of, the defendant cannot be excused unless there was an agreement between the-parties that the wheat subsequently purchased by defendant was to be substituted in place of that left by plaintiff, and to - be his property.”
2. Because the court charged the jury, “ that where a warehouseman receives grain on deposit, with an understanding that he may if he choose, dispose of it, and that he will, when demanded, return other grain or pay for it, in case of such a disposition he is bound to do the one or the other. A subsequent purchase of grain by the warehouseman, for the purpose of meeting the demand for grain thus received, would not be sufficient to vest the property in the plaintiff.”
Now, a paragraph or so from the opinion of the court upon. this question:
“ To determine which of the parties in this case shall sustain the loss of the property in question occasioned by the accident, it becomes necessary to ascertain the true nature and character of the transaction between them, and the rights created and duties imposed thereby. It was either a contract of' sale, a mutuum, or a deposit. If a contract of sale, the right of property passed to the purchaser on delivery, and the article was thereafter held by him at his own risk. If a mutuum,. the absolute property passed to the mutuary, it being a delivery to him for consumption or appropriation to his own use; he being bound to restore, not the same thing, but other-things of the same kind. Thus, it is held, that if corn,, wine, money, or any other thing which is not intended to be delivered back, but only an equivalent in kind, be lost or destroyed by accident, it is the loss of the borrower ormutuary; for it is his property, inasmuch as he received it for his own consumption or use, on condition that he restore the equivalent in kind. And in this class of cases, the general rule is, etc., (citing authorities). But if the transaction. *416 here was a deposit, the property remained in the bailor, and was held by the bailee at the risk of the bailor, so long as he •observed the terms of the contract in so doing. But if the bailee shipped the wheat, and appropriated the same to his own use, in violation of the terms of the bailment, before the burning of his warehouse, he became liable to the bailor for the value of the property.”
After proceeding to discuss at some length the question involved, the learned judge says:
“ In case of a regular deposit, the bailee is bound to return the specific article deposited ; but where the depositary is to return another article of the same kind and value, or has an option to return the specific article, or another of the same kind and value, it is an irregular deposit or mutuum, and passes the property as fully as in a case of ordinary sale or exchange. Sir William Jones .says: ‘It may be proper to mention the distinction between an obligation to restore the specific things, and a power or necessity of returning others of equal value. In the first case, it is a regular bailment; in the second it becomes a debt.’ In the 'latter case he considers the whole property transferred.”
In another paragraph the learned judge says :
“ In all this class of cases, the risk of loss by unavoidable accident attaches to the person who takes the control or dominion over the property. When, therefore, W’ashburn’s wheat was delivered to Chase & Co., and became subject to their disposal, either to retain, or to ship it on their own account, the property passed, and the risk of loss by accident followed the dominion over it.”
The ruling in the case does not seem at any time to have been questioned in our courts. It is approved by the Supreme Court in the case of O’Dell v. Leyda et al., 46 Ohio St. page 244, and especially pages 249 and 250. The subject is further discussed in a later ease reported in the 48th Ohio St., bnt nothing in the opinion delivered in the case in any degree questioned the wisdom of the ruling made in the case of Chase v. Washburn. The case reported in the 48th Ohio St. is found on page 262.
*417 We have examined the most of the authorities cited by the counsel for the plaintiff in error in this case bearing upon this question, and we are unable to find anything contained in them that would warrant any distinction between this and the case of Chase v. Washburn.
In the case of Chase v. Washburn, it will be observed as I have before stated, that the receipt issued is silent as to any power or control on the part of the warehouseman over the wheat; but testimony was given tending to show that, according to the custom and usage prevailing, it was the understanding had between the parties to the transaction that the warehousemen were at liberty to dispose of the wheat if they chose to do so, or to return other wheat in its place. But in this case, the receipt, as it appears to us, provides in specific terms that the warehousemen may, at their option, purchase the wheat. “ Reveived in store from A. Gibbs 403 45-60 bushels of wheat which we store for one-half cents per bushel per month, and are to have at the market price when called for, unless we prefer to furnish the grain.”
It is true that there is no direct obligation assumed on the part of the warehouseman to purchase the wheat at the market price when called for, but surely if it is competent to show an understanding outside of the receipt at the time the grain is deposited that the warehousemen may take thejwheat at the market price when called for, and the courts enforce such an understanding and maintain it, allow and enforce it, we cannot see any reason why an express stipulation of this kind contained in the receipt which the parties issued for the wheat at the time it was delivered, does not secure to them the right to purchase the wheat. It is au option, it is true, but it is an option for which a consideration ,is paid in the transaction itself. The parties received the wheat in store, and they are to be allowed a certain commission per bushel for it, — for taking the responsibility and for handling it,'but as a part of the transaction and upon the same consideration in part that the *418 -one-half per cent, a bushel is allowed to be paid, they have an ■option secured to them of taking the wheat at the market price. The case i& somewhat similar in principle to a case determined in one of the volumes of our state reports where a party releases real estate at a certain rental per annum and with the stipulation that at the end of the lease, if he desires to purchase the land at the stipulated price, he may do so, and the Supreme Court has held virtually, that such a stipulation .as that is good and binding and may be enforced.
A. M. Beattie, for plaintiff in error.
Andrews Bros., for defendant in error.
Here, of course, the case is somewhat different in character. ‘ But the principle involved is the same as that which was applied, as we understand, in the case of Chase v. Washburn.
For these reasons, the judgment of the court of common pleas will be affirmed.